Matter of Cardillo (2026 NY Slip Op 01282)

Matter of Cardillo

2026 NY Slip Op 01282

Decided on March 05, 2026

Appellate Division, First Department

Per Curiam 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: March 05, 2026
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Present — Hon. Tanya R. Kennedy
Justice Presiding
Barbara R. Kapnick Martin Shulman Margaret A. Chan Shlomo S. Hagler
Justices.
 Motion No. 2025-04848 Case No.2025-05420
 In the Matter of Christopher Scott Cardillo
an attorney
counselor-at-law: Attorney Grievance Committee for the First Judicial Department
Petitioner
Christopher Scott Cardillo (OCA Atty. Reg. No. 4058756)
Respondent.

Motion No. 2025-04848|Case No. 2025-05420|

[*1]In the Matter of Christopher Scott Cardillo, an Attorney and Counselor-at-Law: Attorney Grievance Committee for the First Judicial Department, Petitioner, Christopher Scott Cardillo (OCA Atty. Reg. No. 4058756), Respondent.

Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, Christopher Scott Cardillo, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the Second Judicial Department on September 18, 2002.

Jorge Dopico, Chief Attorney, Attorney Grievance Committee, New York City (Kevin P. Culley, of counsel), for petitioner.
Respondent, pro se.

Per Curiam 

Respondent, Christopher S. Cardillo, was admitted to the practice of law in the State of New York by the Second Judicial Department on September 18, 2002, under the name Christopher Scott Cardillo. Respondent maintains a law office in the First Judicial Department.
In September 2025, the Attorney Grievance Committee (AGC) moved, pursuant to the Rules for Attorney Disciplinary Matters (22 NYCRR) § 1240.9(a)(2) and (5), to immediately suspend respondent from the practice of law until further order of this Court, based on admission under oath to the commission of professional misconduct and uncontroverted evidence of professional misconduct, namely respondent's conversion and/or misappropriation of funds entrusted to him.
In May 2023, the AGC received a complaint from an individual (X.Z.) alleging that in connection with respondent's representation of him in a federal criminal prosecution, respondent induced X.Z. to deposit X.Z.'s savings into respondent's escrow account to protect the funds from being seized. X.Z. alleges that between December 26, 2017 and April 10, 2018, X.Z. provided respondent with checks totaling $4,739,299.77 which respondent deposited into respondent's escrow account at TD Bank. X.Z. alleges that despite repeated requests, respondent has failed to return the funds. In his answer to X.Z.'s complaint, respondent denied the allegation and asserted that his dealings with X.Z. arose from an "arms length transaction" unrelated to the practice of law. Respondent claims that X.Z. solicited respondent to invest X.Z.'s money in business ventures and the dispute between respondent and X.Z. is of a "civil nature."
Pursuant to a judicial subpoena, the AGC obtained respondent's bank records, which confirmed that between December 26, 2017 and April 18, 2018, X.Z. was issued several checks and by April 18, 2018, $4.7 million had been deposited into respondent's escrow account. At an examination under oath (EUO), respondent testified about agreements governing the parties' relationship, specifically the escrow and investment advisory agreements dated December 28, 2017. On their face, the agreements authorized respondent to invest X.Z.'s funds at respondent's sole discretion and provided that respondent would receive a fee equal to 10% of the total sum held in escrow. Respondent claimed that despite the agreement being titled "Escrow Agreement," "[t]here was no escrow agreement" and the funds were escrowed for the purpose of funding the business venture.
Respondent also testified about a shareholders' agreement and promissory note related to the formation of Car-Zang Management Corp. (Car-Zang). Respondent testified that the shareholders' agreement granted respondent 100% ownership in Car-Zang and pursuant to the promissory note, both respondent and X.Z. contributed $2 million each into Car-Zang. However, respondent acknowledged that respondent's $2 million investment came in the form of a loan from X.Z. Respondent testified further that X.Z.'s funds were used to fund a medical spa and restaurant. According to the AGC, the bank records failed to show any investments in Car-Zang or the medical spa and restaurant. Of the $4.7 million received into respondent's escrow account, $396,796.45 was used to pay X.Z.'s mortgage, utilities, and personal expenses and the balance of $4,342,542.32 was disbursed to respondent personally or to unrelated third parties. In addition, the AGC alleges that there were 16 debit withdrawals totaling over $3 million that remain unaccounted for.
In another matter, respondent represented A.C. in a personal injury action pursuant to a one-third contingency retainer, plus reimbursements of expenses. On December 7, 2017, respondent deposited A.C.'s $15,000 settlement check into his escrow account, bringing the escrow balance to approximately $20,000. Between December 7, 2017 and December 26, 2017, before distributing any portion of the settlement proceeds to or on behalf of A.C., respondent made a series of seven transfers totaling $15,000 from the escrow account to his business account, reducing the escrow account balance to approximately $5,000. Respondent then used the transferred settlement funds to make over 100 debit transactions, totaling $14,345.35. Thereafter, respondent issued four checks from his escrow account to distribute A.C.'s settlement proceeds. However, because respondent had already transferred A.C.'s settlement funds out of his escrow account and into his business account where they were depleted, respondent replenished the $8,374.31 shortfall by using X.Z.'s funds, which by then, had been deposited into respondent's escrow account.
The AGC asserts that respondent misappropriated millions of dollars and attempted to conceal his actions through evasive and inconsistent explanations. With respect to X.Z., respondent argues that the documentary record proves that the funds were intended as business investments rather than escrowed client funds. Respondent states that the parties had a business relationship which was governed by a series of contracts and that he did not deposit any monies in the escrow account for the benefit of X.Z. The AGC maintains that interim suspension is warranted because the documentary evidence overwhelmingly shows misappropriation of client funds. Although respondent claims that X.Z. was merely an investor in a business venture, the AGC states that there is no documentary support that any of X.Z.'s funds were invested in Car-Zang, the medical spa or restaurant, or that Car-Zang ever conducted business or maintained bank accounts or tax returns. The AGC further contends that, even assuming the escrow and advisory agreements were valid, respondent would be entitled to no more than 10% in fees but that he withdrew nearly twice that amount for his own benefit.
With respect to A.C., the AGC notes that respondent failed to address his transfer of A.C.'s settlement funds from his escrow account to his operation account from which the funds were nearly depleted without disbursement to or on behalf of A.C. Respondent also does not address his invasion of X.Z.'s funds to pay A.C.
22 NYCRR 1240.9(a) provides for an interim suspension "upon a finding by the Court that the respondent has engaged in conduct immediately threatening the public interest. Such a finding may be based upon: ... (2) the respondent's admission under oath to the commission of professional misconduct or (5) other uncontroverted evidence of professional misconduct." The AGC advances two independent bases for interim relief under this rule. First, it contends that respondent's handling of approximately $4.7 million deposited by X.Z. constitutes conversion/misappropriation of client escrow funds. Second, it asserts that respondent converted client escrow funds belonging to A.C. by transferring them to his operating account, exhausting them, and later replacing them with funds belonging to X.Z. The parties dispute the legal and factual nature of X.Z.'s deposits. The AGC asserts that X.Z.'s funds were entrusted to respondent as client escrow funds. Respondent, by contrast, maintains that the deposits represented capital contributions
toward business ventures and that use of the funds was governed by agreements signed by X.Z. Resolution of this dispute would require the Court to assess credibility, interpret the parties' contracts, and make findings as to the nature and scope of the underlying relationship. Such determinations are ordinarily reserved for disciplinary hearings and, in this matter, may also overlap with issues in the pending civil litigation between the parties. Accordingly, the X.Z. transactions do not presently constitute "uncontroverted evidence" of misconduct within the meaning of 22 NYCRR 1240.9(a)(5). Those issues will be more appropriately addressed after a full evidentiary record has been developed.
However, the record is materially different with respect to respondent's handling of settlement proceeds belonging to A.C.
The AGC's submission, including bank statements and respondent's own testimony, establishes that (1) A.C.'s settlement proceeds were deposited into respondent's escrow account; (2) respondent thereafter improperly transferred all those funds into his business account; (3) the business account had a low balance, and the transferred escrow funds were used for personal and business expenditures unrelated to A.C.; and (4) when respondent later issued checks to and on behalf of A.C. to satisfy his share of the settlement, the funds used to make those payments were no longer traceable to the original settlement proceeds but instead derived from subsequent deposits to escrow made by X.Z.
These facts are established through contemporaneous banking records and are not meaningfully disputed. They reflect both (a) the dissipation of client escrow funds and (b) the later replenishment of that shortfall using money belonging to another client or third party. This constitutes conversion and/or misappropriation of client funds and demonstrates respondent's failure to safeguard entrusted property and to maintain required escrow records.
Under long-standing precedent, such conduct satisfies 22 NYCRR 1240.9(a)(5) because it constitutes uncontroverted evidence of professional misconduct threatening the public interest (see Matter of Schwartz, 214 AD3d 153 [1st Dept 2023] [interim suspension based on bank records showing invasion of escrow funds]; Matter of Carlebach, 156 AD3d 44 [1st Dept 2017]; Matter of Kiss, 152 AD3d 129 [1st Dept 2017]).
Because the A.C. transactions independently establish uncontroverted evidence of misappropriation/conversion, the Court need not reach the AGC's alternative argument under 22 NYCRR 1240.9(a)(2) based on alleged admissions under oath. Interim suspension is fully supported under subdivision (a)(5), and addressing (a)(2) would not alter the result.
The AGC has demonstrated, through bank records and sworn statements, that respondent converted client escrow funds belonging to A.C. and later replenished them using X.Z.'s deposits. This constitutes uncontroverted evidence of professional misconduct posing an immediate threat to the public interest.
Accordingly, the motion should be granted to the extent of suspending respondent pursuant to 22 NYCRR 1240.9(a)(5), effective immediately and until further order of the Court.
All concur.
Wherefore, it is Ordered that the motion by the Attorney Grievance Committee for the First Judicial Department for interim suspension, pursuant to 22 NYCRR 1240.9(a)(5), is granted, and respondent, Christopher Scott Cardillo, is suspended from the practice of law, effective immediately, and until further order of the Court; and
It is further Ordered that, pursuant to Judiciary Law § 90, during the period of suspension, respondent, Christopher Scott Cardillo, is commanded to desist and refrain from (1) the practice of law in any form, either as principal or agent, clerk or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and
It is further Ordered that, during the period of suspension, respondent, Christopher Scott Cardillo, shall comply with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15), which are made part hereof; and
It is further Ordered that if respondent, Christopher Scott Cardillo, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith; and
It is further Ordered that, within 20 days of the date of service of this order, respondent Christopher Scott Cardillo, may submit a request, in writing, to this Court for a post-suspension hearing (see 22 NYCRR 1240.9[c]).
Entered: March 05, 2026